UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| TABARI SHARRIEFF STRONG, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. C-12-94 |
| § | |
| RICK THALER, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se,* petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 26, 2012 (D.E. 1). Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on June 18, 2012 to which petitioner responded on August 13, 2012 (D.E. 13, 18). As discussed more fully below, it is respectfully recommended that respondent's motion for summary judgment be granted and petitioner's habeas corpus petition be denied.

## JURISDICTION

Jurisdiction and venue are proper in this court because petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a sentence of life without parole for capital murder (Mot. for Sum. Jmt., Ex. A; D.E. 13-1 at 2). He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20120042311 petitioner was accused and found guilty of refusing to comply with grooming standards in that he had a full beard (Disp. Hrg. Recs. at 1; D.E. 14-1 at 3).

In the offense report, the charging officer wrote that on October 12, 2011 she saw that petitioner had a full beard after having been advised to shave several times over the previous few days. The charging officer also noted that petitioner did not have a clipper shave pass (Disp. Hrg. Recs. at 2; D.E. 14-1 at 4). During the investigation of the case petitioner said that because he was Muslim he was not required to shave but was entitled to have a one-quarter-inch long beard (Disp. Hrg. Recs. at 3, 6; D.E. 14-1 at 5, 8).

At the hearing held on October 24, 2011, petitioner stated that he was allowed to have a beard because he was practicing Islam. The charging officer was not contacted because petitioner did not present any non-frivolous evidence (Disp. Hrg. Recs. at 7; D.E. 14-1 at 9). Petitioner was found guilty based on the charging officer's report and the petitioner's failure to present non-frivolous evidence (Disp. Hrg. Recs. at 1; D.E. 14-1 at 3). He was punished with the loss of 45 days of recreation and commissary privileges, a reduction in line class to G-4 and the loss of 30 days of good time (Id.)

On October 10, 2011, prior to the hearing, petitioner filed a Step 1 grievance, but it was returned to him because the case was not yet in the computer (Disp. Grv. Recs at 3-4; D.E. 14-2 at 4-5). Petitioner filed another grievance on October 25, 2011, in which he

argued that the disciplinary charges were "fake" or "bogus" because, as a Muslim, he is entitled to grow a quarter-inch-long beard. Petitioner received a response on November 18, 2011 telling him that his case was reviewed and there was sufficient evidence to uphold the finding that he failed to obey the policy on grooming standards (Disp. Grv. Recs at 7-8; D.E. 14-2 at 8-9). Petitioner filed a Step 2 grievance on December 9, 2011 in which he argued that he was not allowed to present evidence at the hearing and that making him shave was a violation of his right to religious freedom. He received a response dated February 9, 2012 telling him that his case was reviewed, the disciplinary charge was appropriate for the offense, the guilty verdict was supported by a preponderance of the evidence, all due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines (Disp. Grv. Recs. at 5-6; D.E. 14-2 at 6-7).

Petitioner filed this habeas action[1] on March 26, 2012 and makes the following arguments: (1) the disciplinary conviction is unsupported by evidence; (2) he was not allowed to present documentary evidence; (3) the TDCJ-CID grooming policy violates his right to religious freedom and (4) the TDCJ-CID staff is retaliating against him for an earlier grievance he filed. In his motion for summary judgment, respondent contends that because petitioner is not eligible for release to mandatory supervision, he has failed to state a claim that his constitutional rights have been violated. Petitioner concedes that he

---

[1] Petitioner also has filed a 42 U.S.C. § 1983 lawsuit arguing that TDCJ-CID is violating his rights to religious freedom. See Strong v. Livingston, No. 2:12-cv-106 (S.D. Tex. filed April 9, 2012).

is not eligible for release to mandatory supervision, but argues that because of his G-4 line class status he is not allowed to attend Islamic study classes and he is not allowed contact visits with his mother. He says that these restrictions impose an atypical and significant hardship on him in relation to ordinary prison life.

## APPLICABLE LAW

### A. Due Process Rights

Respondent avers that petitioner failed to allege a Constitutional violation. In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted). The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the

nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  Id.

### 1. Line Class

To the extent petitioner is complaining about a reduction in line class, he fails to state a basis of relief.  Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996).  "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)).  See also Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

Petitioner states that his line class prevents him from having contact visits with his mother, but prisoners do not have a liberty interest in contact visits. Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985).  Petitioner further asserts that because of his line class status he is not allowed to attend Islamic study classes or services.  However, short-term limitations on religious practices have been found not to present an atypical and

significant hardship triggering due process protections. Samak v. Satcher, No. 1:04-CV-623, 2007 WL 2708284 at *6 (E.D. Tex. 2007)(citing Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)). In addition, petitioner retains the right to participate in alternative means of exercising his religion, such as praying and worshiping in his cell. Baranowski v. Hart, 486 F.3d 112, 131 (5th Cir. 2007). Accordingly, the reduction in petitioner's line class status does not state a basis for habeas relief.

### 2. Mandatory Supervision

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997)(citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)).[2] Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE §508.147(a). The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time credit. Teague v. Quarterman, 482 F.3d 769, 777 (5th Cir. 2007).

However, some inmates are not eligible for release to mandatory supervision because of the nature of their offenses. Petitioner is not eligible for release to mandatory supervision because he was convicted of capital murder (Mot. for Sum. Jmt, Ex. A; D.E.

---

[2] Current version of statute located at TEX. GOV'T CODE §508.147.

13-1).  See also TEX. PENAL CODE § 19.03 and TEX. GOV'T CODE §508.147.  Because he is not eligible for release to mandatory supervision, he cannot show that he has been deprived of a liberty interest and therefore has failed to make out a claim of entitlement to habeas corpus relief.

### 3. Other Punishment

Petitioner also lost commissary and recreation privileges for 45 days.  Such punishments do not implicate a liberty interest because they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Malchi, 211 F.3d at 958.  Summary judgment should be entered for respondent on all of petitioner's claims.

## B. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The COA determination under

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his cause of action be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that petitioner has no protected liberty interest in the privileges taken away as a result of the disciplinary proceeding.

## **RECOMMENDATION**

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 13) be granted. Petitioner's cause of action for habeas corpus relief should be denied. It is further recommended that any request for a Certificate of Appealability be denied.

ORDERED this 11th day of September, 2012.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).